UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIV. 18-$1022$ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| TRAVIS LEE HEARNEN, CNH INDUSTRIAL CAPITAL AMERICA, LLC, PLAINS COMMERCE BANK, and the STATE OF SOUTH DAKOTA, | |
| Defendants. | |

The United States of America, by and through its undersigned attorneys, United States Attorney Ronald A. Parsons, Jr., and Assistant United States Attorney Alison J. Ramsdell, and on behalf of the Farm Service Agency, hereby states and alleges as follows:

## JURISDICTION & VENUE

1.      This Court has jurisdiction under 28 U.S.C. § 1345 because the United States of America is the Plaintiff through its agency, Farm Service Agency ("FSA"), a branch of the United States Department of Agriculture.

2.      Defendant, Travis Lee Hearnen ("Borrower"), is a resident of Spink County, South Dakota.

## REQUEST FOR JUDGMENT UPON PROMISSORY NOTES

3.      On or about the dates indicated below, Borrower, for value received, made, executed, and delivered to Plaintiff promissory notes described as follows:

| EXHIBIT | PRINICIPAL OF ORIGINAL NOTE | DATE OF ORIGINAL NOTE | RATE OF INTEREST | LOAN NUMBER |
|---|---|---|---|---|
| 1 | $116,300.00 | 02/10/2011 | 2.25% | 44-02 |
| 2 | $20,000.00 | 05/31/2012 | 1.5% | 44-03 |
| 3 | $87,922.63 | 08/19/2014 | 2.125% | 44-05 |
| 4 | $17,578.38 | 08/19/2014 | 1.5% | 44-06 |
| 5 | $137,000.00 | 03/11/2015 | 2.50% | 44-07 |

A true and correct copy of said promissory notes are attached hereto as **Exhibits 1–5**.

Loan 44-05 is a reschedule of Loan 44-02, a term operating loan for $116,300.00 made on February 10, 2011, to refinance a bank loan and purchase thirty heifers and one bull. Loan 44-06 is a reschedule of Loan 44-03, a term operating loan for $20,000.00 made on May 31, 2012, to refinance a bank loan and purchase thirty heifers and one bull. Loan 44-07 is a term operating loan for $137,000.00 made to purchase bred heifers. The loans are secured with farm products, equipment, and livestock chattels.

4.      The amounts currently due and owing upon the notes are attached hereto as **Exhibit 6**, and are as follows:

**LOAN 44-05**
Principal:                                                               $34,198.66
Accrued Interest as of 07/20/2018:                                       $209.05
    Daily Interest Accrual: $1.9910
**Total Amount Due:**                                                **$34,407.71**

**LOAN 44-06**
Principal:                                                               $273.59
Accrued Interest as of 07/20/2018:                                       $1.15
    Daily Interest Accrual: $0.0112
**Total Amount Due:**                                                  **$274.75**

**LOAN 44-07**
Principal:                                                               $97,602.35
Accrued Interest as of 07/20/2018:                                       $2,914.70
    Daily Interest Accrual: $6.6851
**Total Amount Due:**                                               **$100,517.05**

5.    As security for the notes, Borrower made, executed, and delivered to Plaintiff security agreements, describing security for these loans as follows:

| EXHIBIT NUMBER | DATE OF SECURITY AGREEMENT | PERSON PLEDGING COLLATERAL | GENERAL DESCRIPTION OF COLLATERAL PLEDGED |
|---|---|---|---|
| 7 | 02/10/2011 | Travis Lee Hearnen | • Crops on 24 acres in Spink County owned by Neil & Darlene Grant<br>• Crop on 82 acres in Spink County owned by Fern McPartland<br>• Crops on 130 acres in Spink County owned by Don Hearnen<br>• Crops on 20 acres in Spink County owned by Darlene Morten<br>• 1 H&S bi-fold 12 wheel rake, serial #98082<br>• 1 IH 856 tractor, serial #261037UO28136<br>• 1 6-wheel Vicon Rake, serial #4300520226<br>• 1 Bale Fork<br>• 1 2x24 Wilson Stock Trailer, serial #1W1B4BJCX7H533993<br>• 1 2001 one-ton Dually Dodge pickup, serial #1B7MF33751J595997<br>• 1 1984 GMC 3500 pickup, serial #1GCGK24M8EJ128019<br>• 1 1978 Chevy 3500 pickup, seral #TCS3478524604<br>• 1 4-year-old Cattle-Beef-Breeding Bulls<br>• 1 Cattle-Beef-Breeding Bulls to be purchased w/loan funds<br>• 36 3-5-year-old Cattle-Beef-Breeding Cows<br>• 30 Cattle-Beef-Breeding Heifers to be purchased w/loan funds |

| EXHIBIT NUMBER | DATE OF SECURITY AGREEMENT | PERSON PLEDGING COLLATERAL | GENERAL DESCRIPTION OF COLLATERAL PLEDGED |
|---|---|---|---|
| 8 | 05/31/2012 | Travis Lee Hearnen | • Crops on 212 acres in Spink County owned by Don Hearnen |

3

| EXHIBIT NUMBER | DATE OF SECURITY AGREEMENT | PERSON PLEDGING COLLATERAL | GENERAL DESCRIPTION OF COLLATERAL PLEDGED |
|---|---|---|---|
| | | | <ul><li>Crops on 24 acres in Spink County owned by Grant</li><li>Crops on 20 acres in Spink County owned by Darlene Morten</li><li>Crops on 82 acres in Spink County owned by Don Hearnen</li><li>1 H&S bi-fold 12 wheel Rake, serial #98082</li><li>1 2005 Honda Rancher 350 4-wheeler, serial #1HFTE250054417143</li><li>1 cow oiler</li><li>1 2011 100gal & fill rite 25 gal/min fuel tank & pump</li><li>1 IH 856 tractor, serial #261037UO28136</li><li>1 6-wheel Vicon Rake, serial #4300520226</li><li>1 Bale Fork</li><li>1 2000 567 (5x6 round) JD baler to purchase</li><li>1 2x24 Wilson Stock Trailer, serial #1W1B4BJCX7H533993</li><li>1 2001 one-ton Dually Dodge pickup, serial #1B7MF33751J595997</li><li>1 1977 Chevy 3500 pickup, seral #TCS3478524604-junk</li><li>1 1984 Chevy ¾ ton 2WD pickup, serial #1GCGC23W1ES174043</li><li>1 1979 Chevy 3500 pickup, serial #1398L08</li><li>1 2004 Honda VTX 1399 motorcycle</li><li>46 100-pound new black cross-breed Cattle-Beef-Calves</li><li>2 4-year-old Cattle-Beef-Breeding Bulls</li><li>55 3-5-year-old Cattle-Beef-Breeding Cows</li><li>7 Cattle-Beef-Breeding Heifers-open</li></ul> |

| EXHIBIT NUMBER | DATE OF SECURITY AGREEMENT | PERSON PLEDGING COLLATERAL | GENERAL DESCRIPTION OF COLLATERAL PLEDGED |
|---|---|---|---|
| 9 | 06/06/2013 | Travis Lee Hearnen | <ul><li>Crops on 80 acres in Spink County owned by Don Hearnen</li><li>Crops on 80 acres in Spink County owned by Don Hearnen</li><li>Crops on 212 in Spink County owned by Don Hearnen</li><li>Crops on 24 acres in Spink County owned by Grant</li><li>Crops on 20 acres in Spink County owned by Darlene Morten</li><li>Crops on 82 acres in Spink County owned by Don Hearnen</li><li>1 H&S bi-fold 12 wheel Rake, serial #98082</li><li>1 2005 Honda Rancher 350 4-wheeler, serial #1HFTE250054417143</li><li>1 cow oiler</li><li>1 2011 100gal & fill rite 25 gal/min fuel tank & pump</li><li>1985 JD 4450/740 Tractor/loader-purchasing May, serial #RW4950P004312-ldr-W00740D031</li><li>1 6-wheel Vicon Rake, serial #4300520226</li><li>1 Bale Fork</li><li>1 2x24 Wilson Stock Trailer, serial #1W1B4BJCX7H533993</li><li>1 2001 one-ton Dually Dodge pickup, serial #1B7MF33751J595997</li><li>1 1977 Chevy 3500 pickup, seral #TCS3478524604-junk</li><li>1 1984 Chevy ¾ ton 2WD pickup, serial #1GCGC23W1ES174043</li><li>1 1979 Chevy 3500 pickup, serial #1398L08</li><li>5 1,200-pound Cattle-Beef-Beef Cows-Cull-FSA's</li><li>3 1,200-pound Cattle-Beef-Beef Cows-Cull-Dakotah Bank's</li><li>64 100-pound new black cross-breed Cattle-Beef-Calves</li></ul> |

| EXHIBIT NUMBER | DATE OF SECURITY AGREEMENT | PERSON PLEDGING COLLATERAL | GENERAL DESCRIPTION OF COLLATERAL PLEDGED |
|---|---|---|---|
| | | | <ul><li>2 4-year-old Cattle-Beef-Breeding Bulls</li><li>48 Cattle-Beef-Breeding Cows-FSA's</li><li>23 2-year-old Cattle-Beef-Breeding Cows-Dakotah Bank's</li><li>6 Cattle-Beef-Breeding Heifers-FSA's open</li></ul> |

| EXHIBIT NUMBER | DATE OF SECURITY AGREEMENT | PERSON PLEDGING COLLATERAL | GENERAL DESCRIPTION OF COLLATERAL PLEDGED |
|---|---|---|---|
| 10 | 06/17/2014 | Travis Lee Hearnen | <ul><li>Crops on 80 acres in Spink County owned by Don Hearnen</li><li>Crops on 80 acres in Spink County owned by Don Hearnen</li><li>Crops on 212 in Spink County owned by Don Hearnen</li><li>Crops on 24 acres in Spink County owned by Grant</li><li>Crops on 20 acres in Spink County owned by Darlene Morten</li><li></li><li>Crops on 82 acres in Spink County owned by Don Hearnen</li><li>1 H&S bi-fold 12 wheel Rake, serial #98082</li><li>1 2005 Honda Rancher 350 4-wheeler, serial #1HFTE250054417143</li><li>1 cow oiler</li><li>1 2011 100gal & fill rite 25 gal/min fuel tank & pump</li><li>1985 JD 4450/740 Tractor/loader-purchasing May, serial #RW4950P004312-ldr-W00740D031</li><li>1 14-wheel Gehl Rake</li><li>1 cow oiler</li><li>1 6-wheel Vicon Rake, serial #4300520226</li><li>1 Bale Fork</li><li>1 2x24 Wilson Stock Trailer, serial #1W1B4BJCX7H533993</li></ul> |

| EXHIBIT NUMBER | DATE OF SECURITY AGREEMENT | PERSON PLEDGING COLLATERAL | GENERAL DESCRIPTION OF COLLATERAL PLEDGED |
|---|---|---|---|
| | | | • 1 2001 one-ton Dually Dodge pickup, serial #1B7MF33751J595997<br>• 1 1977 Chevy 3500 pickup, seral #TCS3478524604-junk<br>• 1 1984 Chevy ¾ ton 2WD pickup, serial #1GCGC23W1ES174043<br>• 1 1979 Chevy 3500 pickup, serial #1398L08<br>• 3 4-year-old Cattle-Beef-Breeding Bulls-FSA 2 bulls<br>• 53 Cattle-Beef-Breeding Cows-FSA's 66 hd<br>• 22 2-year-old Cattle-Beef-Breedings Cows-DB 30 hd<br>• 6 Cattle-Beef-Breeding Heifers – 1/3 DB; 2/3 FSA's |

| EXHIBIT NUMBER | DATE OF SECURITY AGREEMENT | PERSON PLEDGING COLLATERAL | GENERAL DESCRIPTION OF COLLATERAL PLEDGED |
|---|---|---|---|
| 11 | 08/19/2014 | Travis Lee Hearnen | • Crops on 72 acres near Doland School owned by Doland School<br>• Crops on 55 acres, hay shares owned by Curtis Haskell<br>• Crops on 372 acres in Spink County owned by Don Hearnen<br>• Crops on 24 acres in Spink County owned by Grant (Darliene's)<br>• Crops on 20 acres in Spink County owned by Darlene Morton (Darlene's Conde)<br>• Crops on 82 acres in Spink County owned by Don Hearnen (sub leased McPartland Farm Site)<br>• Crops on 320 acres in Spink County owned by Don Hearnen (sub leased Lenz Family)<br>• Crops on 62 acres in Spink County owned by Jerry Taylor (hay ground)<br>• 1 H&S bi-fold 12 wheel Rake, serial #98082<br>• Cow oiler |

| EXHIBIT NUMBER | DATE OF SECURITY AGREEMENT | PERSON PLEDGING COLLATERAL | GENERAL DESCRIPTION OF COLLATERAL PLEDGED |
|---|---|---|---|
| | | | • 1 2011 100gal & fill rite 25 gal/min fuel tank & pump<br>• 1985 JD 4450/740 Tractor/loader-purchasing May, serial #RW4950P004312-ldr-W00740D031<br>• 1 12-wheel Gehl Rake<br>• 2 homemade steel feed bunks<br>• 16 cement in line feed bunks<br>• 1 JD 567 baler<br>• 1 Gehl 520 6-wheel Rake-selling, serial #4300520226<br>• 1 bale fork<br>• 1 2x24 Wilson Stock Trailer, serial #1W1B4BJCX7H533993<br>• 1 2001 one-ton Dually Dodge pickup, serial #1B7MF33751J595997<br>• 1 1977 Chevy 3500 pickup, seral #TCS3478524604-junk<br>• 1 1984 Chevy ¾ ton 2WD pickup, serial #1GCGC23W1ES174043<br>• 1 1979 Chevy 3500 pickup, serial #1398L08<br>• 1 Peterbuil semi<br>• 1 2013 Harley Davison motorcycle<br>• 3 4-year-old Cattle-Beef-Breeding Bulls<br>• 75 Cattle-Beef-Breeding Cows<br>• 6 Cattle-Beef-Breeding Heifers |

| EXHIBIT NUMBER | DATE OF SECURITY AGREEMENT | PERSON PLEDGING COLLATERAL | GENERAL DESCRIPTION OF COLLATERAL PLEDGED |
|---|---|---|---|
| 12 | 01/14/15 | Travis Lee Hearnen | • Crops on 80 acres in Spink County owned by Don Hearnen<br>• Crops on 80 acres in Spink County owned by Don Hearnen<br>• Crops on 212 acres in Spink County owned by Don Hearnen (Dad's place)<br>• Crops on 20 acres in Spink County owned by Darlene Morten (Darlene)<br>• Crops on 72 acres in Spink County owned by State |

| EXHIBIT NUMBER | DATE OF SECURITY AGREEMENT | PERSON PLEDGING COLLATERAL | GENERAL DESCRIPTION OF COLLATERAL PLEDGED |
|---|---|---|---|
| | | | <ul><li>Crops on 24 acres in Spink County owned by Grant (Grant's-hay ground)</li><li>Crops on 60 acres in Spink County owned by Jeff Young</li><li>Crops on 62 acres in Spink County owned by Jerry Taylor</li><li>Crops on 320 in Spink County owned by Lenz-sub from Dad (Lenz ground)</li><li>Crops on 82 acres in Spink County owned by McPartland sub from Dad (McPartland land)</li><li>1 H&S bi-fold 12 wheel Rake, serial #98082</li><li>Cow oiler</li><li>1 2011 100gal & fill rite 25 gal/min fuel tank & pump</li><li>1985 JD 4450/740 Tractor/loader-purchasing May, serial #RW4950P004312-ldr-W00740D031</li><li>1 12-wheel Gehl Rake</li><li>2 homemade steel feed bunks</li><li>16 cement in line feed bunks</li><li>1 JD 567 baler</li><li>1 bale fork</li><li>1 2x24 Wilson Stock Trailer, serial #1W1B4BJCX7H533993</li><li>1 2001 one-ton Dually Dodge pickup, serial #1B7MF33751J595997</li><li>1 1977 Chevy 3500 pickup, seral #TCS3478524604-junk</li><li>1 1984 Chevy ¾ ton 2WD pickup, serial #1GCGC23W1ES174043</li><li>1 1979 Chevy 3500 pickup, serial #1398L08</li><li>1 Peterbuil semi</li><li>1 1998 Dodge ¾ ton pickup</li><li>1 2013 Harley Davison motorcycle</li><li>4 4-year-old Cattle-Beef-Breeding Bulls</li><li>72 Cattle-Beef-Breeding Cows</li><li>3 Cattle-Beef-Breeding Heifers</li></ul> |

| EXHIBIT NUMBER | DATE OF SECURITY AGREEMENT | PERSON PLEDGING COLLATERAL | GENERAL DESCRIPTION OF COLLATERAL PLEDGED |
|---|---|---|---|
| 13 | 08/02/2016 | Travis Lee Hearnen | <ul><li>Crops on 80 acres in Spink County owned by Don Hearnen</li><li>Crops on 80 acres in Spink County owned by Don Hearnen</li><li>Crops on 212 acres in Spink County owned by Don Hearnen (Dad's place)</li><li>Crops on 20 acres in Spink County owned by Darlene Morten (Darlene)</li><li>Crops on 24 acres in Spink County owned by Grant (Grant's-hay ground)</li><li>Crops on 60 acres in Spink County owned by Jeff Young</li><li>Crops on 82 acres in Spink County owned by McPartland sub from Dad (McPartland land)</li><li>1 H&S bi-fold 12 wheel Rake, serial #98082</li><li>Cow oiler</li><li>1 2011 100gal & fill rite 25 gal/min fuel tank & pump</li><li>1985 JD 4450/740 Tractor/loader-purchasing May, serial #RW4950P004312-ldr-W00740D031</li><li>1 12-wheel Gehl Rake</li><li>2 homemade steel feed bunks</li><li>16 cement in line feed bunks</li><li>1 JD 567 baler</li><li>Hydrolic [sic] tractor spear / bale spear</li><li>5 freestanding portable panels</li><li>1 2015 homemade 16x40 calving barn-portable w/head gate, 3 pens</li><li>1 bale fork</li><li>1 2x24 Wilson Stock Trailer, serial #1W1B4BJCX7H533993</li><li>1 1977 Chevy 3500 pickup, seral #TCS3478524604-junk</li><li>1 1984 Chevy ¾ ton 2WD pickup, serial #1GCGC23W1ES174043</li><li>1 1979 Chevy 3500 pickup, serial #1398L08</li></ul> |

| EXHIBIT NUMBER | DATE OF SECURITY AGREEMENT | PERSON PLEDGING COLLATERAL | GENERAL DESCRIPTION OF COLLATERAL PLEDGED |
|---|---|---|---|
| | | | <ul><li>1 Peterbuil semi, serial #1XP5DB9X4JD256009</li><li>1 1998 Dodge ¾ ton pickup, serial #3B7KF6D3WM217853</li><li>1 2013 Harley Davison motorcycle</li><li>3 4-year-old Cattle-Beef-Breeding Bulls with white tags</li><li>1 Cattle-Beef-Breeding Bull purchased in 2015</li><li>66 Cattle-Beef-Breeding Cows with white tags</li><li>30 Cattle-Beef-Breeding Cows purchased 2015</li></ul> |

True and correct copies of the security agreements are attached as **Exhibits 7–13.**

6.     The security interests were perfected by filing the following documents with the South Dakota Secretary of State.

| EXHIBIT | DATE OF UCC FILING | PERSON PLEDGING COLLATERAL | GENERAL DESCRIPTION OF COLLATERAL PLEDGED |
|---|---|---|---|
| 7 | 02/10/2011 | Travis Lee Hearnen | Crops, farm and other equipment, and livestock |
| 8 | 05/31/2012 | Travis Lee Hearnen | Crops, farm and other equipment, and livestock |
| 9 | 06/06/2013 | Travis Lee Hearnen | Crops, farm and other equipment, and livestock |
| 10 | 06/17/2014 | Travis Lee Hearnen | Crops, farm and other equipment, and livestock |
| 11 | 08/19/2014 | Travis Lee Hearnen | Crops, farm and other equipment, and livestock |
| 12 | 01/14/2015 | Travis Lee Hearnen | Crops, farm and other equipment, and livestock |
| 13 | 08/02/2016 | Travis Lee Hearnen | Crops, farm and other equipment, and livestock |

True and correct copies of the financing statements, amendments, and continuation statements are attached as **Exhibits 7-13.**

7.     Plaintiff has been and is now the owner and holder of the notes and security agreements.

8.     Borrower is in default of the terms of the notes and security agreements because he failed to make timely payments of principal and interest when due.

9.     The notes provide that failure to pay when due any debt evidenced by the notes or to perform any covenants of agreement under the notes shall constitute default under the notes and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. **Exhibits 1–5**. Upon default, Plaintiff may declare all or any part of Borrower's indebtedness immediately due and payable. *Id.* Thus, Plaintiff may accelerate the debt.

The security agreements provide that default occurs if Borrower fails to perform or discharge any obligation or to pay promptly any indebtedness secured by the security agreements. **Exhibits 7–13.** Upon default, Plaintiff may declare the unpaid balance on the notes, and any indebtedness secured by the security agreements, immediately due and payable and exercise any sale or other rights accorded by law, among other rights. *Id.* Borrower further agreed to assemble the collateral and make it available to Plaintiff at such times and places as designated by Plaintiff, and Borrower waived all notices, exemptions, compulsory disposition, and redemption rights.

10.     Plaintiff notified Borrower that the debt had been accelerated on or about October 26, 2017. A true and correct copy of the acceleration notice is attached hereto as **Exhibit 14**.

11.     Because of Borrower's default, Plaintiff has accelerated the note; declared all of the debt evidenced thereby immediately due and payable; and is entitled to judicially enforce the Plaintiff's security interests and have all underlying security sold in the manner prescribed by law, and the proceeds applied to the amounts due.

12.     No other action at law or proceeding in equity or otherwise has been commenced or is now pending for the foreclosure of the chattel security agreement or the collection of the debt secured thereby.

13.     The following Defendants may claim some lien or interest in the chattel property that is the subject of this action:

| EXHIBIT | LIENHOLDER OR INTEREST HOLDER | TYPE OF LIEN | DATE OF LIEN | AMOUNT OF LIEN |
|---|---|---|---|---|
| 15 | CNH Industrial Capital America, LLC | Tractor/Loader | 05/29/2013 | Unknown |
| 15 | Plains Commerce Bank | | 06/09/2014 | Unknown |
| 16 | State of South Dakota | State Tax Liens | 08/21/2017 11/29/2017 | $1,129.68 $1,130.00 |

14.     No personal claim is made against any defendant other than the Borrower.

15.     Plaintiff is entitled to all proper costs incurred, or to be incurred by Plaintiff, from the time this Complaint is filed to the conclusion of this action.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor as follows:

1.     Judgment be entered against Borrower in the amount of $135,199.51 as of August 29, 2018, together with any additional sums advanced, costs or expenses expended herein, and interest accruing thereon.

2.     A Decree of Sale be entered directing the United States Marshal or his deputy to sell the chattel property as provided by law, without the right of redemption, and to apply the proceeds as follows: (a) to the costs and expenses of sale; (b) to the payment of the costs and disbursements taxed in the action in which the sale is made; (c) to payment on the debt adjudged

by the Court to be due; (d) to pay the surplus, if any, into court for the use of the Borrower or the person entitled thereto, subject to the order of the Court.

3.      The security interest of the Plaintiff in the above-described chattel property be foreclosed and that the Borrower be adjudged to have no further right, title, or interest in said chattel property.

4.      The Borrower or those individuals in possession of Borrower's chattel be directed to peacefully assemble and deliver to the United States Marshal the herein described chattel property.

5.      The United States Marshal be directed to take possession of said chattel property and, after advertising for sale according to law, to sell the chattel property in the manner provided for by law, and to apply the proceeds to the costs and expenses of sale, Plaintiff's costs and expenses of this action, and the indebtedness due to Plaintiff.

6.      The Court determine the lien priority of the parties and interests of the parties and order the Marshal to distribute the proceeds accordingly.

7.      All Defendants, together with each and every person or entity claiming under them or claiming any lien or encumbrance of any kind or character upon or against said chattel property subsequent in time or in priority, or both, to the liens of the Plaintiff's security agreements, and all persons claiming to acquire any right, title, or interest in and to said chattel property or any part thereof subsequent to the filing of said security agreements be barred and foreclosed of and from all rights, title, or interest in and to said property.

8.      Plaintiff be awarded or otherwise reimbursed for the costs and disbursements of this action.

9.     To the extent the net proceeds from the sale of the collateral are less than the amount

of the debt owed to Plaintiff, Plaintiff requests a deficiency judgment against the Borrower for the

remaining balance.

10.    Any other relief the Court deems to be just and equitable.

Dated this 21st day of September, 2018.

RONALD A. PARSONS, JR.
United States Attorney

ALISON J. RAMSDELL
Assistant United States Attorney
P.O. Box 2638
Sioux Falls, SD 57101-2638
Phone: (605) 357-2338
Fax: (605) 330-4402
Alison.Ramsdell@usdoj.gov

This form is available electronically.

Form Approved - OMB No. 0560-0237
(See Page 3 for Privacy Act and Public Burden Statements.)

| **FSA-2026**<br>(09-07-10) | **U.S. DEPARTMENT OF AGRICULTURE**<br>Farm Service Agency | Position 2 |
|---|---|---|

## PROMISSORY NOTE

| 1. Name<br> TRAVIS L. HEARNEN | 2. State<br> SOUTH DAKOTA | 3. County<br> SPINK |
|---|---|---|

| 4. Case Number<br>47-58-503175573 | 5. Fund Code<br>44 | 6. Loan Number<br>02 | 7. Date<br> FEBRUARY 10, 2011 |
|---|---|---|---|

| 8. TYPE OF ASSISTANCE<br><br>OL-BF-REG-7 YR | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|

9. ACTION REQUIRING PROMISSORY NOTE:

☐ Initial loan     ☐ Conservation easement     ☐ Deferred payments

☐ Consolidation     ☐ Rescheduling     ☐ Debt write down

☒ Subsequent loan     ☐ Reamortization

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America Department of Agriculture, acting through the Farm Service Agency (Government), or its assigns, at its office in *(a)*     REDFIELD, SOUTH DAKOTA     or at such other place as the Government may later designate in writing, the principal sum of *(b)* ONE HUNDRED SIXTEEN THOUSAND THREE HUNDRED AND NO/100 - - - - - dollars *(c)* ($ 116,300.00 , plus interest on the unpaid principal balance at the RATE of *(d)* TWO AND ONE FOURTH percent *(e)* 2.25 %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may CHANGE THE RATE OF INTEREST in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the - Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)*     SEVEN

installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 18,144.00 | 03/01/2012 | $ 18,144.00 | 03/01/2013 |
| $ 18,144.00 | 03/01/2014 | $ 18,144.00 | 03/01/2015 |
| $ 18,144.00 | 03/01/2016 | $ 18,144.00 | 03/01/2017 |
| $ 18,144.00 | 02/10/2018 | $ NA | NA |

and *(d)* $ NA thereafter on the *(e)* NA of each *(f)* NA until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)*     SEVEN     years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

The U.S Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD) To file a complaint of discrimination, write to USDA Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer

Initial  *TH*  Date  2-10-11

FSA-2026 (09-07-10)

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of. the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a) FUND CODE/ LOAN NO | (b) FACE AMOUNT | (c) INTEREST RATE | (d) DATE (MM-DD-YYYY) | (e) ORIGINAL BORROWER | (f) LAST INSTALL. DUE (MM-DD-YYYY) |
|---|---|---|---|---|---|
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _TH_  Date _2-10-11_

FSA-2026 (09-07-10)                                                                                          Page 3 of 3

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.


TRAVIS L. HEARNEN            (Borrower)


NOTE    The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

*Form Approved - OMB No. 0560-0237*
*(See Page 3 for Privacy Act and Public Burden Statements.)*

This form is available electronically.

| FSA-2026 | U.S. DEPARTMENT OF AGRICULTURE | Position 2 |
|---|---|---|
| (09-07-10) | Farm Service Agency | |

## PROMISSORY NOTE

| 1. Name<br>TRAVIS L. HEARNEN | | 2. State<br>SOUTH DAKOTA | 3. County<br>SPINK |
|---|---|---|---|
| 4. Case Number<br>47-58-503175573 | 5. Fund Code<br>44 | 6. Loan Number<br>03 | 7. Date<br>MAY 31, 2012 |

| 8. TYPE OF ASSISTANCE<br><br>OL-BF-REG-7 YR | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|

9. ACTION REQUIRING PROMISSORY NOTE:

- [ ] Initial loan
- [ ] Conservation easement
- [ ] Deferred payments
- [ ] Consolidation
- [ ] Rescheduling
- [ ] Debt write down
- [X] Subsequent loan
- [ ] Reamortization

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America Department of Agriculture, acting through the Farm Service Agency (Government), or its assigns, at its office in *(a)* REDFIELD, SOUTH DAKOTA or at such other place as the Government may later designate in writing, the principal sum of *(b)* TWENTY THOUSAND AND NO/100 - - - - - - - - - - - - - - - - - - dollars *(c)* ($ 20,000.00 , plus interest on the unpaid principal balance at the **RATE OF** *(d)* ONE AND ONE-HALF

percent *(e)* 1.5 %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)* SEVEN installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 3,031.00 | 03/01/2013 | $ 3,031.00 | 03/01/2014 |
| $ NA | NA | $ NA | NA |
| $ NA | NA | $ NA | NA |
| $ NA | NA | $ NA | NA |

and *(d)* $ 3,031.00 thereafter on the *(e)* MARCH 1ST of each *(f)* YEAR until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)* SEVEN years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

Initial **TH**    Date **5-31-12**

FSA-2026 (09-07-10)                                                                                   Page 2 of 3

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a) FUND CODE/ LOAN NO. | (b) FACE AMOUNT | (c) INTEREST RATE | (d) DATE (MM-DD-YYYY) | (e) ORIGINAL BORROWER | (f) LAST INSTALL. DUE (MM-DD-YYYY) |
|---|---|---|---|---|---|
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial ___TH___     Date __5-31-12__

FSA-2026 (09-07-10)                                                                 Page 3 of 3

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.


TRAVIS L. HEARNEN        (Borrower)

\

| NOTE: | The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE. |

Initial ___TH___ Date __5-31-12__

This form is available electronically. *Reschedule* 44-02

Form Approved - OMB No. 0560-0237
*(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)*

| FSA-2026 (12-05-12) | U.S. DEPARTMENT OF AGRICULTURE Farm Service Agency | | Position 2 |
|---|---|---|---|

## PROMISSORY NOTE

| 1. Name TRAVIS L. HEARNEN | | 2. State SOUTH DAKOTA | 3. County SPINK |
|---|---|---|---|
| 4. Case Number 47-058-503175573 | 5. Fund Code 44 | 6. Loan Number 04  *TH 8-20-14*  OS | 7. Date August 19, 2014 |

| 8. TYPE OF ASSISTANCE | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|
| | ☐ Initial loan    ☐ Conservation easement    ☐ Deferred payments |
| | ☐ Consolidation    ☒ Rescheduling    ☐ Debt write down |
| | ☐ Subsequent loan    ☐ Reamortization |

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)*    REDFIELD, SOUTH DAKOTA    or at such other place as the Government may later designate in writing, the principal sum of *(b)*  EIGHTY-SEVEN THOUSAND NINE HUNDRED TWENTY-TWO AND 63/100--------

dollars *(c)* ($  87,922.63    , plus interest on

the unpaid principal balance at the RATE of *(d)*  TWO AND ONE EIGHTH

percent *(e)*   2.125    %) per annum.  If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address.  The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)*  EIGHT

installments as indicated  below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 13,651.00 | 05/01/2015 | $ NA | NA |
| $ NA | NA | $ NA | NA |
| $ NA | NA | $ NA | NA |
| $ NA | NA | $ NA | NA |

and *(d)* $  13,651.00    thereafter on the *(e)*  1ST OF MAY    of each *(f)* YEAR    until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)*  SEVEN    years from the date of this note, and except that prepayments may be made as provided below.  The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government.  Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government.  Interest shall accrue on the amount of each advance from the actual date disbursed.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay).  USDA is an equal opportunity provider and employer

Initial *TH*    Date  8-19-14

**FSA-2026** (12-05-12)

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a) FUND CODE/ LOAN NO. | (b) FACE AMOUNT | (c) INTEREST RATE | (d) DATE (MM-DD-YYYY) | (e) ORIGINAL BORROWER | (f) LAST INSTALL. DUE (MM-DD-YYYY) |
|---|---|---|---|---|---|
| 44-02 | $ 116,300.— ~~87,922.63~~ | 2.25 % | 02/10/2011 | TRAVIS L. HEARNEN | 03/01/2014 |
| | $ 7H 8-20-14 | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial  TH     Date  8-19-14

**FSA-2026** (12-05-12)

Page 3 of 3

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.

**Signature(s) As Described In State Supplement:**

TRAVIS L. HEARNEN          (BORROWER)

NOTE: The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

This form is available electronically.   *Reschedule 44-03*

Form Approved - OMB No. 0560-0237
(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)

| FSA-2026 (12-05-12) | U.S. DEPARTMENT OF AGRICULTURE Farm Service Agency | Position 2 |
|---|---|---|

## PROMISSORY NOTE

| 1. Name TRAVIS L. HEARNEN | 2. State SOUTH DAKOTA | 3. County SPINK |
|---|---|---|

| 4. Case Number 47-058-503175573 | 5. Fund Code 44 | 6. Loan Number *05* *7H 8-20-14* *06* | 7. Date August 19, 2014 |
|---|---|---|---|

| 8. TYPE OF ASSISTANCE | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|

9. ACTION REQUIRING PROMISSORY NOTE:

- [ ] Initial loan
- [ ] Conservation easement
- [ ] Deferred payments
- [ ] Consolidation
- [x] Rescheduling
- [ ] Debt write down
- [ ] Subsequent loan
- [ ] Reamortization

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)*   REDFIELD, SOUTH DAKOTA   or at such other place as the Government may later designate in writing, the principal sum of *(b)*  SEVENTEEN THOUSAND FIVE HUNDRED SEVENTY-EIGHT AND 38/100------- dollars *(c)* ($  17,578.38  , plus interest on the unpaid principal balance at the RATE of *(d)* ONE AND ONE HALF percent *(e)*  1.5  %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)*  EIGHT  installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 2,665.00 | 05/01/2015 | $ NA | NA |
| $ NA | NA | $ NA | NA |
| $ NA | NA | $ NA | NA |
| $ NA | NA | $ NA | NA |

and *(d)* $  2,665.00  thereafter on the *(e)*  1ST OF MAY  of each *(f)* YEAR  until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)*  SEVEN  years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because of part of an individual's income is derived from any public assistance program (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410 or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer

Initial  *TH*   Date  *8-19-14*

**FSA-2026** (12-05-12)

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a) FUND CODE/ LOAN NO. | (b) FACE AMOUNT | (c) INTEREST RATE | (d) DATE (MM-DD-YYYY) | (e) ORIGINAL BORROWER | (f) LAST INSTALL. DUE (MM-DD-YYYY) |
|---|---|---|---|---|---|
| 44-03 | $ ~~20,000.~~ ~~27,576.30~~ | 1.50 % | 05/31/2012 | TRAVIS L. HEARNEN | 03/01/2014 |
| | $ TH 3-20-14 | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial __TH__   Date __6-19-14__

**FSA-2026** (12-05-12)

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.

**Signature(s) As Described In State Supplement:**

TRAVIS L. HEARNEN          (BORROWER)

NOTE:     The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

          According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

This form is available electronically.

Form Approved - OMB No. 0560-0237
*(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)*

| FSA-2026<br>(12-05-12) | U.S. DEPARTMENT OF AGRICULTURE<br>Farm Service Agency | Position 2 |
|---|---|---|

## PROMISSORY NOTE

| 1  Name<br>TRAVIS L. HEARNEN | | 2. State<br>SOUTH DAKOTA | 3. County<br>SPINK |
|---|---|---|---|
| 4  Case Number<br>47-058-503175573 | 5. Fund Code<br>44 | 6. Loan Number<br>07 | 7. Date<br>MARCH 11, 2015 |

| 8. TYPE OF ASSISTANCE<br><br>211-OL-BF-Reg-7YR | 9. ACTION REQUIRING PROMISSORY NOTE:<br><br>☐ Initial loan     ☐ Conservation easement     ☐ Deferred payments<br><br>☐ Consolidation     ☐ Rescheduling     ☐ Debt write down<br><br>☒ Subsequent loan     ☐ Reamortization |
|---|---|

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)*  REDFIELD, SOUTH DAKOTA  or at such other place as the Government may later designate in writing, the principal sum of *(b)*  ONE HUNDRED THIRTY SEVEN THOUSAND & NO/100--------------------

dollars *(c)* ($ 137,000.00  , plus interest on the unpaid principal balance at the RATE of *(d)*  TWO AND ONE HALF

percent *(e)*  2.50  %) per annum.  If this note is for a Limited Resource loan (indicated in Item 8) the Government may CHANGE THE RATE OF INTEREST in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address.  The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11.  Principal and interest shall be paid in *(a)*  EIGHT

installments as indicated  below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 21,580.00 | 05/01/2016 | $ NA | NA |
| $ NA | NA | $ NA | NA |
| $ NA | NA | $ NA | NA |
| $ NA | NA | $ NA | NA |

and *(d)* $  21,580.00  thereafter on the *(e)*  1ST OF MAY  of each *(f)* YEAR  until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)*  SEVEN  years from the date of this note, and except that prepayments may be made as provided below.  The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government.  Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government.  Interest shall accrue on the amount of each advance from the actual date disbursed.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program.  (Not all prohibited bases apply to all programs.)  Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).  To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay).  USDA is an equal opportunity provider and employer.

Initial  TH  Date  3-11-15

**FSA-2026** (12-05-12)                                                                                                    Page 2 of 3

13.  Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14.  Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15.  Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower.  Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16.  Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government.  Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17.  If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a)<br>FUND CODE/<br>LOAN NO. | (b)<br>FACE AMOUNT | (c)<br>INTEREST RATE | (d)<br>DATE<br>(MM-DD-YYYY) | (e)<br>ORIGINAL BORROWER | (f)<br>LAST INSTALL.<br>DUE<br>(MM-DD-YYYY) |
|---|---|---|---|---|---|
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |

18.  Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization.  These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19.  If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.  The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial  ✗ H     Date  3-11-15

HEARNEN EXHIBIT 5

**FSA-2026** (12-05-12)                                                                                                     Page 3 of 3

20.  The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21.  Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note.  Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22.  This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8.  This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23.  Presentment, protest, and notice are waived.

**Signature(s) As Described In State Supplement:**

_____

TRAVIS L. HEARNEN        (BORROWER)

NOTE:    *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended).  The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.).  The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower.  Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees.  The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number.  The valid OMB control number for this information collection is 0560-0237.  The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.*

| Customer: | HEARNEN, TRAVIS LEE | Case #: | 47-058-*****5573 | |
|---|---|---|---|---|

## Total Payoff

Customer Name : HEARNEN, TRAVIS LEE
Case Number   : 47-058-*****5573
Accrual Date  : 08/29/2018

The Total displays the sum of the selected loans.

### Payoff Summary

| Fund Code / Loan # | Date of Loan | Principal Balance | Total Interest | Daily Int. Accrual | Total Payoff |
|---|---|---|---|---|---|
| 4430-05 | 08/19/2014 | $34,198.66 | $209.05 | $1 9910 | $34,407 71 |
| | Date of Last Cash Payment: 05/16/2018 | | | | |
| | Principal Amounts | | Unpaid Principal: | | $34,198.66 |
| | | | Unpaid Principal Advance: | | $0.00 |
| | Interest Amounts | | Accrued Interest: | | $209.05 |
| | | | Accrued Interest Advance: | | $0.00 |
| 4430-06 | 08/19/2014 | $273 16 | $1.59 | $0.0112 | $274.75 |
| | Date of Last Cash Payment: 04/09/2018 | | | | |
| | Principal Amounts | | Unpaid Principal: | | $273.16 |
| | | | Unpaid Principal Advance: | | $0.00 |
| | Interest Amounts | | Accrued Interest: | | $1.59 |
| | | | Accrued Interest Advance: | | $0.00 |
| 4420-07 | 03/11/2015 | $97,602 35 | $2,914.70 | $6.6851 | $100,517.05 |
| | Date of Last Cash Payment: 06/19/2017 | | | | |
| | Principal Amounts | | Unpaid Principal: | | $97,602.35 |
| | | | Unpaid Principal Advance: | | $0.00 |
| | Interest Amounts | | Accrued Interest: | | $2,914.70 |
| | | | Accrued Interest Advance: | | $0.00 |
| 4440-98 | 01/18/2018 | $79.88 | $1 04 | $0 0047 | $80.92 |
| | Date of Last Cash Payment: | | | | |
| | Principal Amounts | | Unpaid Principal: | | $79.88 |
| | | | Unpaid Principal Advance: | | $0.00 |
| | Interest Amounts | | Accrued Interest: | | $1.04 |
| | | | Accrued Interest Advance: | | $0.00 |
| 4440-99 | 12/22/2017 | $10.00 | $0 15 | $0.0006 | $10.15 |
| | Date of Last Cash Payment: | | | | |
| | Principal Amounts | | Unpaid Principal: | | $10.00 |
| | | | Unpaid Principal Advance: | | $0.00 |
| | Interest Amounts | | Accrued Interest: | | $0.15 |
| | | | Accrued Interest Advance: | | $0.00 |
| Total | | $132,164.05 | $3,126.53 | $8.6926 | $135,290.58 |
| | Principal Amounts | | Unpaid Principal: | | $132,164.05 |
| | | | Unpaid Principal Advance: | | $0.00 |
| | Interest Amounts | | Accrued Interest: | | $3,126.53 |
| | | | Accrued Interest Advance: | | $0.00 |

HEARNEN EXHIBIT 6

This form is available electronically.

Form Approved - OMB No. 0560-0238
*(See Page 7 for Privacy Act and Public Burden Statements)*

| | | |
|---|---|---|
| **FSA-2028**<br>(09-03-10) | **U.S. DEPARTMENT OF AGRICULTURE**<br>**Farm Service Agency** | Position 1 |

### SECURITY AGREEMENT

1. **THIS SECURITY AGREEMENT,** dated *(a)*___**February 10, 2011**___, is made between the United States of America, acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and *(b)*___

   **TRAVIS LEE HEARNEN**___

(Debtor), whose mailing address is (c)___
   **15630 409TH AVE, CONDE, SD 57434-5906**___

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE,** in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a)*:

Initial __T H__  Date __2-10-11__

FSA-2028 (09-03-10)                                                                                    Page 2 of 7

(b)  All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are
     planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)*
     within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security
     Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted,
     to be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and Direction<br>from Named Town or Other<br>Description |
|---|---|---|---|
| Grant, Neil & Darlene | 24 | SPINK, SD | NW1/4 7-11-60 |
| Fern McPartland | 82 | SPINK, SD | NW2 10-119-60 |
| Don Hearnen | 130 | SPINK, SD | NW4 15-119-60; SW4<br>10-119-60; NW4 10-119-60 |
| Darlene Morten | 20 | SPINK, SD | SE1/4 31-120-60 |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all
payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas
existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds
derived from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial  T l+  Date  2-10-11

(c) All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)*  __South Dakota__  :

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Rake | H&S | Bi-fold 12 wheel | good | | 98082 |
| 2 | 1 | Tractor | IH | 856 | fair | | 2610137UO28136 |
| 3 | 1 | Rake | Vicon | 6 wheel | good | | 4300520226 |
| 4 | 1 | Bale Fork | | | excellent | | n/a |
| 5 | 1 | Stock Trailer | Wilson | 7x24 | excellent | 2007 | 1W1B4BJCX7H533993 |
| 6 | 1 | Pickup | Dodge | 1 Ton Dually | | 2001 | 1B7MF33751J595997 |
| 7 | 1 | Pickup | GMC | 3500 | | 1984 | 1GCGK24M8EJ128019 |
| 8 | 1 | Pickup | Chevy | 3500 | | 1978 | TCS3478524604 |

(10) Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial __T H__ Date __2-10-11__

**FSA-2028** (09-03-10)                                                                              Page 4 of 7

(d) All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) of *(1)* __South Dakota__ :

| (2) Line No. | (3) Quantity | (4) Kind or Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Cattle - Beef - Breeding Bulls | | | | 4 | |
| 2 | 1 | Cattle - Beef - Breeding Bulls - to be purchased w/ loan funds | | | | | |
| 3 | 36 | Cattle - Beef - Breeding Cows | | | | 3-5 | |
| 4 | 30 | Cattle - Beef - Breeding Heifers - To Be Purchased w/ Loan funds | | | | | |

Initial __TH__ Date __2-10-11__

HEARNEN EXHIBIT 7

(e)  All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a)  Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and *(3)* other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b)  Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)* insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)* not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c)  Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d)  Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e)  Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f)  Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g)  All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h)  In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial  _TH_____  Date _2-10-11_

**FSA-2028** (09-03-10)                                                                                               Page 6 of 7

## 4. IT IS FURTHER AGREED THAT:

(a) Until default, Debtor may retain possession of the collateral.

(b) **Default** shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

   (1) Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

   (2) Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

   (3) A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c) Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d) It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e) Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly **WAIVES** the benefit of any such State laws.

(f) Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g) This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h) If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

Initial _TH_ Date _2-10-11_

FSA-2028 (09-03-10)                                                                                          Page 7 of 7

(i) The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

(j) If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k) Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l) **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.**

## 5. CERTIFICATION

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A. *Travis Hearnen*                                        6B. *(Date)*  2-10-11
_____
TRAVIS LEE HEARNEN

_____                                    *(Date)* _____
Debtor

NOTE:   The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).

To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

This form is available electronically.

| | Form Approved - OMB No. 0560-0238 |
| --- | --- |
| | (See Page 7 for Privacy Act and Public Burden Statements). |

| FSA-2028 | U.S. DEPARTMENT OF AGRICULTURE | Position 1 |
| --- | --- | --- |
| (09-03-10) | Farm Service Agency | |

## SECURITY AGREEMENT

1. **THIS SECURITY AGREEMENT**, dated *(a)*_____**May 31, 2012**_____, is made between the United States of America, acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and *(b)*_____
   **TRAVIS LEE HEARNEN**_____

(Debtor), whose mailing address is (c)_____
   **15630 409TH AVE, CONDE, SD 57434-5906**_____

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE**, in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a)*:

Initial ___TH___  Date __5-31-12__

FSA-2028 (09-03-10)                                                                 Page 2 of 7

(b)  All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are
planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)*
within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security
Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted,
to be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and Direction<br>from Named Town or Other<br>Description |
|---|---|---|---|
| Don Hearnen | 212 | SPINK, SD | NW 1/4 15-119-60 - Dad's place |
| Grant | 24 | SPINK, SD | NW 1/4 7-11-60 |
| Darlene Morten | 20 | SPINK, SD | SE 1/4 31-120-60 |
| Don Hearnen | 82 | SPINK, SD | SW1/4 & NW1/4 10-119-60 |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all
payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas
existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds
derived from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial _____TH_____ Date _5-31-12_

HEARNEN EXHIBIT 8

FSA-2028 (09-03-10)                                                                    Page 3 of 7

(c)  All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of (1) ___South Dakota___ :

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Rake | H&S | Bi-fold 12 wheel | good | | 98082 |
| 2 | 1 | 4-wheeler | Honda | Rancher 350 | poor | 2005 | 1HFTE250054417143 |
| 3 | 1 | cow oiler | | | | | |
| 4 | 1 | Fuel Tank & pump | | 100 gal & fill rite 25 gal/min | | 2011 | |
| 5 | 1 | Tractor | IH | 856 | fair | | 2610137UO28136 |
| 6 | 1 | Rake | Vicon | 6 wheel | good | | 4300520226 |
| 7 | 1 | Bale Fork | | | excellent | | n/a |
| 8 | 1 | Baler - To Purchase | JD | 567 (5x6 Round) | Good | 2000 | E00567X302446 |
| 9 | 1 | Stock Trailer | Wilson | 7x24 | excellent | 2007 | 1W1B4BJCX7H533993 |
| 10 | 1 | Pickup | Dodge | 1 Ton Dually | | 2001 | 1B7MF33751J595997 |
| 11 | 1 | Pickup | Chevy | 3500 | | 1977 | TCS3478524604 - junk |
| 12 | 1 | Pickup | Chevy | 3/4 ton 2WD | good | 1984 | 1GCGC23W1ES174043 |
| 13 | 1 | Pickup | Chevy | 3500 | | 1979 | 1398L08 |
| 14 | 1 | Motorcycle | Honda VTX | 1300 | good | 2004 | |

(10) Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial _TH_   Date _5-31-10_

**FSA-2028** (09-03-10)

(d)  All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) of *(1)* ___South Dakota___ :

| (2) Line No. | (3) Quantity | (4) Kind or Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | 46 | Cattle - Beef - Calves | cross | blk | 100 | new | |
| 2 | 2 | Cattle - Beef - Breeding Bulls | | | | 4 | |
| 3 | 55 | Cattle - Beef - Breeding Cows | | | | 3-5 | |
| 4 | 7 | Cattle - Beef - Breeding Heifers - open | | | | | |

Initial ___*TH*___  Date ___5-31-12___

HEARNEN EXHIBIT 8

FSA-2028 (09-03-10)                                                                                          Page 5 of 7

(e)   All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title,
      payment intangibles, and general intangibles, including but not limited to the following:

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a)   Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe
      livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral
      is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other
      interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and
      (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm
      operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b)   Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as
      stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan
      funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon
      from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)*
      insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured
      Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)*
      not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or
      permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon,
      injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock
      covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested
      information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c)   Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured
      by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and
      costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the
      collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or
      terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d)   Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements
      and to file continuation statements.

(e)   Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in
      Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may
      affect this security interest or its perfection; and any event of default.

(f)   Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due,
      including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for
      the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g)   All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by
      Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party
      shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any
      indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h)   In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further
      documents, including additional security instruments on such real and personal property as Secured Party may require and to
      take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to
      effectuate the rights granted to Secured Party herein.

Initial __TH__   Date _5-31-12_

FSA-2028 (09-03-10)                                                                                                Page 6 of 7

**4. IT IS FURTHER AGREED THAT:**

(a)  Until default, Debtor may retain possession of the collateral.

(b)  Default shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

    (1)  Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

    (2)  Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

    (3)  A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c)  Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d)  It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e)  Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly **WAIVES** the benefit of any such State laws.

(f)  Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g)  This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h)  If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

Initial  *TH*    Date  *5-31-12*

FSA-2028 (09-03-10)                                                                    Page 7 of 7

(i) The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

(j) If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k) Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l) **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.**

## 5. CERTIFICATION

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A. _TRAVIS LEE HEARNEN_                 6B. (Date)  5-31-12

_____                  (Date) _____
Debtor

NOTE:   The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).

To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer

This form is available electronically.

<table>
<tr><td>FSA-2028<br>(09-03-10)</td><td>U.S. DEPARTMENT OF AGRICULTURE<br>Farm Service Agency</td><td>Form Approved - OMB No. 0560-0238<br>(See Page 7 for Privacy Act and Public Burden Statements)<br><br>Position 1</td></tr>
</table>

## SECURITY AGREEMENT

1. **THIS SECURITY AGREEMENT,** dated *(a)* _____ **June 6, 2013** _____ , is made between the United States of America, acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and *(b)* _____
   **TRAVIS LEE HEARNEN** _____

(Debtor), whose mailing address is (c) _____
   **15630 409TH AVE, CONDE, SD 57434-5906** _____

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE,** in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a)*:

Initial _TH_   Date _6-26-13_

FSA-2028 (09-03-10)                                                                                    Page 2 of 7

(b)  All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are
      planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)*
      within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security
      Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted,
      to be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and Direction<br>from Named Town or Other<br>Description |
|---|---|---|---|
| Don Hearnen | 80 | SPINK, SD | |
| Don Hearnen | 80 | SPINK, SD | |
| Don Hearnen | 212 | SPINK, SD | NW1/4 15-119-60 - Dad's place |
| Grant | 24 | SPINK, SD | NW1/4 7-11-60 |
| Darlene Morten | 20 | SPINK, SD | SE 1/4 31-120-60 |
| Don Hearnen | 82 | SPINK, SD | SW1/4 & NW1/4 10-119-60 |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all
payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas
existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds
derived from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial ___TH___ Date __6-26-13__

FSA-2028 (09-03-10)                                                                                    Page 3 of 7

(c) All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)* ___South Dakota___ :

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Rake | H&S | Bi-fold 12 wheel | good | | 98082 |
| 2 | 1 | 4-wheeler | Honda | Rancher 350 | poor | 2005 | 1HFTE250054417143 |
| 3 | 1 | cow oiler | | | | | |
| 4 | 1 | Fuel Tank & pump | | 100 gal & fill rite 25 gal/min | | 2011 | |
| 5 | 1 | Tractor/loader - Purchasing May | JD | 4450/740 | good | 1985 | RW4950P004312/ldr:W0 0740D031 |
| 6 | 1 | Rake | Vicon | 6 wheel | good | | 4300520226 |
| 7 | 1 | Bale Fork | | | excellent | | n/a |
| 8 | 1 | Stock Trailer | Wilson | 7x24 | excellent | 2007 | 1W1B4BJCX7H533993 |
| 9 | 1 | Pickup | Dodge | 1 Ton Dually | | 2001 | 1B7MF33751J595997 |
| 10 | 1 | Pickup | Chevy | 3500 | | 1977 | TCS3478524604 - junk |
| 11 | 1 | Pickup | Chevy | 3/4 ton 2WD | good | 1984 | 1GCGC23W1ES174043 |
| 12 | 1 | Pickup | Chevy | 3500 | | 1979 | 1398L08 |

(10) Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial ___TH___ Date ___6-26-13___

FSA-2028 (09-03-10)                                                                                       Page 4 of 7

(d)   All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals,
      other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter
      acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited
      to the following located in the State(s) of *(1)*   __South Dakota__   :

| (2) Line No. | (3) Quantity | (4) Kind or Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | 5 | Cattle - Beef - Beef Cows-Cull - FSA's | | | 1,200 | | |
| 2 | 3 | Cattle - Beef - Beef Cows-Cull – Dakota Bank's | | | 1,200 | | |
| 3 | 64 | Cattle - Beef - Calves | cross | blk | 100 | new | |
| 4 | 2 | Cattle - Beef - Breeding Bulls | | | | 4 | |
| 5 | 48 | Cattle - Beef - Breeding Cows - FSA's | | | | | |
| 6 | 23 | Cattle - Beef - Breeding Cows - Dakotah Bank's | | | | 2 | |
| 7 | 6 | Cattle - Beef - Breeding Heifers - FSA's open | | | | | |

Initial _____ *TH* _____ Date _____ *6-26-13* _____

(e)   All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT :

(a)   Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b)   Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)* insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)* not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c)   Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d)   Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e)   Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f)   Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g)   All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h)   In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial   T H   Date  6-26-13

**FSA-2028** (09-03-10)                                                                              Page 6 of 7

**4. IT IS FURTHER AGREED THAT:**

   (a)  Until default, Debtor may retain possession of the collateral.

   (b)  Default shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

      (1)  Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

      (2)  Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

      (3)  A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

   (c)  Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

   (d)  It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

   (e)  Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly **WAIVES** the benefit of any such State laws.

   (f)  Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

   (g)  This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

   (h)  If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

Initial    *TH*     Date    *6-26-13*

(i) The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

(j) If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k) Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l) **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW .**

## 5. CERTIFICATION

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A. _____  6B. (Date) _6-26-13_
      **TRAVIS LEE HEARNEN**

_____  (Date) _____
Debtor

NOTE: The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).

To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer

This form is available electronically.

| | Form Approved - OMB No. 0560-0238 |
| --- | --- |
| | *(See Page 7 for Privacy Act and Public Burden Statements).* |

| FSA-2028 (09-03-10) | U.S. DEPARTMENT OF AGRICULTURE Farm Service Agency | Position 1 |
| --- | --- | --- |

## SECURITY AGREEMENT

1. **THIS SECURITY AGREEMENT,** *dated (a)* __June 17__ __, 2014__ __, is made between the United States of America acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and (b) __TRAVIS LEE HEARNEN.__

(Debtor), whose mailing address is (c) __15630 409TH AVE. CONDE, SD 57434-5906__

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE,** in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a):*

Initial _TH_ Date _7-2-14_

FSA-2028 (02-03-10)                                                                          Page 2 of 7

(b) All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are
planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)*
within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security
Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted, to
be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and<br>Direction from Named Town or<br>Other Description |
|---|---|---|---|
| Don Hearnen | 80 | SPINK, SD | |
| Don Hearnen | 80 | SPINK, SD | |
| Don Hearnen | 212 | SPINK, SD | NW1/4 15-119-60 – Dad's place |
| Grant | 24 | SPINK, SD | NW1/4 7-11-60 |
| Darlene Morten | 20 | SPINK, SD | SE 1/4 31-120-60 |
| Don Hearnen | 82 | SPINK, SD | SW1/4 & NW1/4 10-119-60 |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all
payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas
existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived
from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial _TH_  Date _7-2-14_

HEARNEN EXHIBIT 10

**FSA-2028** (09-03-10)                                                                                          Page 3 of 7

(c)  All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)* ___South Dakota___

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Rake | H&S | Bi-fold 12 wheel | good | | 98062 |
| 2 | 1 | 4-wheeler | Honda | Rancher 350 | poor | 2005 | 1HFTE250054417143 |
| 3 | 1 | cow oiler | | | | | |
| 4 | 1 | Fuel Tank & pump | | 100 gal & fill rite 25 gal/min | | 2011 | |
| 5 | 1 | Tractor/loader - Purchasing May | JD | 4450/740 | good | 1986 | RW4950P004312/ldr:W00740D031 |
| 6 | 1 | Rake | Gehl | 14 Wheel | | | |
| 7 | 1 | Cow Oiler | | | | | |
| 8 | 1 | Rake | Vicon | 6 wheel | good | | 4300520228 |
| 9 | 1 | Bale Fork | | | excellent | | n/a |
| 10 | 1 | Stock Trailer | Wilson | 7x24 | excellent | 2007 | 1W1B4BJCX7H533993 |
| 11 | 1 | Pickup | Dodge | 1 Ton Dually | | 2001 | 1B7MF33751J595997 |
| 12 | 1 | Pickup | Chevy | 3500 | | 1977 | TCS3478524604 - junk |
| 13 | 1 | Pickup | Chevy | 3/4 ton 2WD | good | 1984 | 1GCGC23W1ES174043 |
| 14 | 1 | Pickup | Chevy | 3500 | | 1979 | 139BL08 |

Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial  *TH*  Date  *7-2-14*

**FSA-2028** (09-03-10)

(d) All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) of *(1)*

South Dakota

| (2) Line No. | (3) Quantity | (4) Kind-Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | 3 | Cattle - Beef - Breeding Bulls - FSA 2 bulls | | | | 4 | |
| 2 | 53 | Cattle - Beef - Breeding Cows - FSA's - 66 hd | | | | | |
| 3 | 22 | Cattle - Beef - Breeding Cows - BB - 30 hd - | | | | 2 | . |
| 4 | 6 | Cattle - Beef - Breeding Heifers - 1/3 DB; 2/3 FSA's | | | | | |

Initial  *TH*  Date  *7-2-14*

**FSA-2028** (09-03-10)                                                                 Page 5 of 7

(e) All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a) Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b) Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)* insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)* not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c) Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d) Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e) Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f) Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g) All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h) In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial _*TH*_ Date _*7-2-14*_

**FSA-2028** (09-03-10)                                                                                          Page 6 of 7

## 4. IT IS FURTHER AGREED THAT:

(a) Until default, Debtor may retain possession of the collateral.

(b) Default shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

   (1) Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

   (2) Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

   (3) A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c) Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d) It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e) Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly **WAIVES** the benefit of any such State laws.

(f) Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g) This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h) If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

Initial  *TH*  Date  *7-2-14*

FSA-2028 (09-03-10)                                                                                                    Page 7 of 7

(i)  The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and
     assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and
     several and shall bind personal representatives, heirs, successors, and assigns.

(j)  If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable
     rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and
     accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be
     responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not
     apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k)  Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or
     condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without
     notice upon any subsequent breach of the same or any other covenant or condition.

(l)  **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS
     SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE
     STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A
     VIOLATION OF FEDERAL CRIMINAL LAW.**

## 5. CERTIFICATION

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith.
(Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If
any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A.  _Travis Lee Hearnen_                                6B. *(Date)*  ___7-2-14___

TRAVIS LEE HEARNEN

_____                              *(Date)* _____

Debtor

> NOTE:  *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting
> the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The
> information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan
> guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal
> agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described
> in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the
> requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan
> guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be
> applicable to the information provided.*
>
> *According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a
> collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection
> is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the
> time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and
> reviewing the collection of information.* **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).

To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer

This form is available electronically.

Form Approved - OMB No. 0560-0238
*(See Page 7 for Privacy Act and Public Burden Statements)*

| FSA-2028<br>(09-03-10) | U.S. DEPARTMENT OF AGRICULTURE<br>Farm Service Agency | Position 1 |
| --- | --- | --- |

## SECURITY AGREEMENT

1. **THIS SECURITY AGREEMENT,** *dated (a)* ___August 19_____, *2014*_____ , is made between the United States of America acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and (b) **TRAVIS LEE HEARNEN,**

(Debtor), whose mailing address is (c) 15630 409TH AVE, CONDE, SD 57434-5906

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE,** in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a)*:

Initial _TH_ Date _8-19-14_

**FSA-2028** (09-03-10)                                                                                    Page 2 of 7

(b) All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)* within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted, to be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and<br>Direction from Named Town or<br>Other Description |
|---|---|---|---|
| Doland School | 72 | | Doland School |
| Curtis haskell | 55 | | hay shares |
| Don Hearnen | 372 | SPINK, SD | Dad's Farm Site/pasture |
| Grant | 24 | SPINK, SD | Darliene's |
| Darlene Morten | 20 | SPINK, SD | Darlene's Conde |
| Don Hearnen | 82 | SPINK, SD | sub leased McPartland Farm Site |
| Don Hearnen | 320 | SPINK, SD | Sub Lease Lenz Family |
| Jerry Taylor | 62 | SPINK, SD | Hay ground |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial _____ Date _____

HEARNEN EXHIBIT 11

**FSA-2028** (09-03-10)                                                                 Page 3 of 7

(e) All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)* <u>South Dakota</u>

| (2)<br>Line<br>No. | (3)<br>Quantity | (4)<br>Kind | (5)<br>Manufacturer | (6)<br>Size and Type | (7)<br>Condition | (8)<br>Year | (9)<br>Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Rake | H&S | Bi-fold 12 wheel | good | | 98082 |
| 2 | 2 | cow oiler | | | | | |
| 3 | 1 | Fuel Tank & pump | | 100 gal & fill rite 25 gal/min | | 2011 | |
| 4 | 1 | Tractor/loader | JD | 4450/740 | good | 1986 | RW4950P004312/ldr:W 00740D031 |
| 5 | 1 | Rake | Gehl | 12 Wheel | | | |
| 6 | 2 | Feed Bunks | Home Made | steel | | | |
| 7 | 16 | feed bunks | Cement | Cement In line | | | |
| 8 | 1 | Baler | JD | 567 | good | | |
| 9 | 1 | Rake - selling | Gehl | 520 - 8 wheel | good | | 4300520228 |
| 10 | 1 | Bale Fork | | | excellent | | n/a |
| 11 | 1 | Stock Trailer | Wilson | 7x24 | excellent | 2007 | 1W1B4BJCX7H533993 |
| 12 | 1 | Pickup | Dodge | 1 Ton Dually | | 2001 | 1B7MF33751J595997 |
| 13 | 1 | Pickup | Chevy | 3500 | | 1977 | TCS3478524604 - junk |
| 14 | 1 | Pickup | Chevy | 3/4 ton 2WD | good | 1984 | 1GCGC23W1ES174043 |
| 15 | 1 | Pickup | Chevy | 3500 | | 1979 | 1398L08 |
| 16 | 1 | Semi | Peterbilt | | | | |
| 17 | 1 | Motorcycle | Harley Davidson | | Excellent | 2013 | |

Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial _JH_  Date _8- 19- 14_

FSA-2028 (09-03-10)                                                                              Page 4 of 7

(d) All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other
animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by
Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following
located in the State(s) of *(1)*

    South Dakota

| (2) Line No. | (3) Quantity | (4) Kind-Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | 3 | Cattle - Beef - Breeding Bulls | | | | 4 | |
| 2 | 75 | Cattle - Beef - Breeding Cows | | | | | |
| 3 | 6 | Cattle - Beef - Breeding Heifers | | | | | |

Initial *TH*  Date *8-19-14*

(e) All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a) Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b) Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)* insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)* not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c) Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d) Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e) Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f) Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g) All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h) In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial _TH_ Date _8-19-14_

**FSA-2028** (09-03-10)

**4. IT IS FURTHER AGREED THAT:**

(a) Until default, Debtor may retain possession of the collateral.

(b) **Default** shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

    (1) Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

    (2) Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

    (3) A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c) Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d) It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e) Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly **WAIVES** the benefit of any such State laws.

(f) Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g) This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h) If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

Initial _TH_ Date _8-19-14_

**FSA-2028** (09-03-10)                                                      Page 7 of 7

(i) The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

(j) If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k) Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l) **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.**

**5. CERTIFICATION**

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A. _____    6B. *(Date)* 9-19-14
TRAVIS LEE HEARNEN

_____    *(Date)* _____
Debtor

NOTE: *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.* **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).

To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer

This form is available electronically.

Form Approved - OMB No. 0560-0238
*(See Page 7 for Privacy Act and Public Burden Statements).*

| **FSA-2028**<br>(09-03-10) | **U.S. DEPARTMENT OF AGRICULTURE**<br>**Farm Service Agency** | Position 1 |
| --- | --- | --- |

### SECURITY AGREEMENT

1. **THIS SECURITY AGREEMENT,** *dated (a)* __January 14__ __,2015__ , is made between the United States of America acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and (b) **TRAVIS LEE HEARNEN.**

(Debtor), whose mailing address is (c) <u>15630 409TH AVE, CONDE, SD 57434-5906</u>

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE,** in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a)*:

Initial _TH_ Date _1-21-15_

**FSA-2028** (09-03-10)                                                                              Page 2 of 7

(b) All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are
planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)*
within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security
Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted, to
be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and<br>Direction from Named Town or<br>Other Description |
|---|---|---|---|
| Don Hearnen | 80 | SPINK, SD | |
| Don Hearnen | 80 | SPINK, SD | |
| Don Hearnen | 212 | SPINK, SD | Dad's place |
| Darlene Morten | 20 | SPINK, SD | Darlene |
| Siste | 72 | SPINK, SD | |
| Grant | 24 | SPINK, SD | Grant's - hay ground |
| Jeff Young | 60 | SPINK, SD | |
| Jerry Taylor | 62 | SPINK, SD | |
| Lenz - sub from Dad | 320 | SPINK, SD | Lenz Ground |
| McPartland sub from Don | 82 | SPINK, SD | McPartland Ground |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all
payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas
existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived
from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial  *TH*  Date  *1-21-15*

FSA-2028 (09-03-10)                                                                                    Page 3 of 7

(c) All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items
    of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements,
    substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)*
    __South Dakota_____ :

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Rake | H&S | Bi-fold 12 wheel | good | | 98082 |
| 2 | 2 | cow oiler | | | | | |
| 3 | 1 | Fuel Tank & pump | | 100 gal & fill rite 25 gal/min | | 2011 | |
| 4 | 1 | Tractor/loader | JD | 4450/740 | good | 1988 | RW4950P004312/ldr:W 00740D031 |
| 5 | 1 | Rake | Gehl | 12 Wheel | | | |
| 6 | 2 | Feed Bunks | Home Made | steel | | | |
| 7 | 16 | feed bunks | Cement | Cement in line | | | |
| 8 | 1 | Baler | JD | 567 | good | | |
| 9 | 1 | Bale Fork | | | excellent | | n/a |
| 10 | 1 | Stock Trailer | Wilson | 7x24 | excellent | 2007 | 1W1B4BJCX7H533993 |
| 11 | 1 | Pickup | Dodge | 1 Ton Dually | | 2001 | 1B7MF33751J595997 |
| 12 | 1 | Pickup | Chevy | 3500 | | 1977 | TCS3478524604 - junk |
| 13 | 1 | Pickup | Chevy | 3/4 ton 2WD | good | 1984 | 1GCGC23W1ES174043 |
| 14 | 1 | Pickup | Chevy | 3500 | | 1979 | 1398L08 |
| 15 | 1 | Semi | Peterbilt | | | 1988 | 1XP5DB9X4JD256009 |
| 16 | 1 | Pickup | Dodge | 3/4 Ton | | 1998 | |
| 17 | 1 | Motorcycle | Harley Davidson | | Excellent | 2013 | |

Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be
cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial _TH_ Date _1-21-15_

FSA-2028 (09-03-10)                                                                 Page 4 of 7

(d) All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) of *(1)*

____South Dakota_____

_____:

| (2) Line No. | (3) Quantity | (4) Kind-Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | 4 | Cattle - Beef - Breeding Bulls | | | | 4 | |
| 2 | 72 | Cattle - Beef - Breeding Cows | | | | | |
| 3 | 3 | Cattle - Beef - Breeding Heifers | | | | | |

Initial _TH_ Date _1-21-15_

(e)  All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a)  Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b)  Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)* insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)* not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c)  Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d)  Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e)  Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f)  Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g)  All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h)  In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial *TH*   Date *1-21-15*

**FSA-2028** (09-03-10)

**4. IT IS FURTHER AGREED THAT:**

(a) Until default, Debtor may retain possession of the collateral.

(b) Default shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

    (1) Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

    (2) Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

    (3) A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c) Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d) It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e) Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly WAIVES the benefit of any such State laws.

(f) Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g) This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h) If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

Initial  *TH*  Date  *1-21-15*

**FSA-2028** (09-03-10)                                                                 Page 7 of 7

(i) The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

(j) If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k) Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l) **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.**

## 5. CERTIFICATION

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A. _____  6B. *(Date)* _1-21-15_
TRAVIS LEE HEARNEN

_____   *(Date)* _____
Debtor

NOTE: *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.* **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD)

To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer

Form Approved - OMB No. 0560-0238
*(See Page 7 for Privacy Act and Paperwork Reduction Act Statements).*

This form is available electronically.

| | | |
|---|---|---|
| **FSA-2028**<br>(02-01-16) | **U.S. DEPARTMENT OF AGRICULTURE**<br>**Farm Service Agency** | Position 1 |

**SECURITY AGREEMENT**

1. **THIS SECURITY AGREEMENT,** *dated (a)* __August 2__ , __2016__ , is made between the United States of America acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and (b) **TRAVIS LEE HEARNEN,**

(Debtor), whose mailing address is (c) __15630 409TH AVE, CONDE, SD 57434-5906__

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE,** in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**MICROLOANS ONLY. DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral as indicated with (m). For the microloan collateral involving equipment and livestock, Secured Party acknowledges that it is taking a security interest in the specifically listed equipment or livestock and all replacements or substitutions. For microloan crop collateral, Secured Party acknowledges that it is taking a security interest in the specific crop, inventory, accounts and contract rights, crop indemnity payments, all entitlements, benefits, and payments from State and Federal farm programs, and deposit amounts arising out of the Debtor's operation or ownership of that crop. Any after acquired provisions in this Security Agreement do not apply to microloan collateral unless the loan is serviced pursuant to 7 C.F.R. part 766. **PLEASE NOTE:** This provision shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein for all other loans:

**ALL OTHER LOANS. DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a):*

Initial __TH__ Date __10-7-16__

**FSA-2028** (02-01-16)                                                                                          Page 2 of 7

(b) All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are
planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)*
within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security
Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted, to
be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and<br>Direction from Named Town or<br>Other Description |
|---|---|---|---|
| Don Hearnen | 80 | SPINK, SD | |
| Don Hearnen | 80 | SPINK, SD | |
| Don Hearnen | 212 | SPINK, SD | Dad's place |
| Darlene Morten | 20 | SPINK, SD | Darlene |
| Grant | 24 | SPINK, SD | Grant's - hay ground |
| Jeff Young | 60 | SPINK, SD | |
| McPartland sub from Don | 82 | SPINK, SD | McPartland Ground |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all
payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas
existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived
from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial _TH_ Date _10-7-16_

HEARNEN EXHIBIT 13

**FSA-2028** (02-01-16)                                                                                      Page 3 of 7

(c)  All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items
of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements,
substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)*
___South Dakota_____    :

| (2)<br>Line<br>No. | (3)<br>Quantity | (4)<br>Kind | (5)<br>Manufacturer | (6)<br>Size and Type | (7)<br>Condition | (8)<br>Year | (9)<br>Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Rake | H&S | Bi-fold 12 wheel | good | | 98082 |
| 2 | 2 | cow oiler | | | | | |
| 3 | 1 | Fuel Tank & pump | | 100 gal & fill rite<br>25 gal/min | fair | 2011 | |
| 4 | 1 | Tractor/loader | JD | 4450/740 | good | 1986 | RW4950P004312/ldr:W<br>00740D031 |
| 5 | 1 | Rake | Gehl | 12 Wheel | | | |
| 6 | 2 | Feed Bunks | Home Made | steel | | | |
| 7 | 16 | feed bunks | Cement | Cement in line | | | |
| 8 | 1 | Baler | JD | 567 | good | | E00567X302446 |
| 9 | 1 | Hydrolic Bale Spear | | Hydrolic tractor<br>spear | | | |
| 10 | 5 | Panels | | Freestanding<br>Portable | | | |
| 11 | 1 | Calving Barn -<br>Portable | Home made | 16x40 w/ head<br>gate, 3 pens | good | 2015 | |
| 12 | 1 | Bale Fork | | goes on Pickup | excellent | | n/a |
| 13 | 1 | Stock Trailer | Wilson | 7x24 | excellent | 2007 | 1W1B4BJCX7H533993 |
| 14 | 1 | Pickup | Chevy | 3500 | poor | 1977 | TCS3478524604 - junk |
| 15 | 1 | Pickup | Chevy | 3/4 ton 2WD | fair | 1984 | 1GCGC23W1ES174043 |
| 16 | 1 | Pickup | Chevy | 3500 | poor | 1979 | 1398L08 |
| 17 | 1 | Semi | Peterbilt | | good | 1988 | 1XP5DB9X4JD256009 |
| 18 | 1 | Pickup | Dodge | 3/4 Ton | fair | 1998 | 3B7KF26D3WM217853 |
| 19 | 1 | Motorcycle | Harley Davidson | | Excellent | 2013 | |

(10)Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber
to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial  *TH*  Date  *10-7-16*

FSA-2028 (02-01-16)                                                                      Page 4 of 7

(d) All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) of *(1)*

South Dakota

| (2) Line No. | (3) Quantity | (4) Kind or Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | 3 | Cattle - Beef - Breeding Bulls | | | | 4 | white tags |
| 2 | 1 | Cattle - Beef - Breeding Bulls - * purch 2015 | | | | | |
| 3 | 66 | Cattle - Beef - Breeding Cows | . | | | | white tags |
| 4 | 30 | Cattle - Beef - Breeding Cows - * Purch 2015 | | | | | |

Initial *TH*  Date  *10-7-16*

**FSA-2028** (02-01-16)                                                                                        Page 5 of 7

(e) All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a) Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b)  Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)* insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)* not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c) Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d) Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e) Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f)  Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g) All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h)  In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial _TH_ Date _10-7-16_

**FSA-2028** (02-01-16)                                                                    Page 6 of 7

**4. IT IS FURTHER AGREED THAT:**

(a) Until default, Debtor may retain possession of the collateral.

(b) Default shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

    (1) Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

    (2) Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

    (3) A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c) Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d) It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e) Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly **WAIVES** the benefit of any such State laws.

(f) Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g) This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h) If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

(i) The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

Initial *TH* Date *10-7-16*

**FSA-2028** (02-01-16)                                                      Page 7 of 7

(j) If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k) Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l) **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.**

(m) Debtor(s) acknowledge(s) that Secured Party loaned money to me/us to purchase items of collateral that serve as security for my/our loan, thereby, giving Secured Party a Purchase Money Security Interest in those items of collateral listed in Part 2 with an asterisk*.

## 5. CERTIFICATION

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A. _Travis Hearnen_          6B. *(Date)*  10-7-16

TRAVIS LEE HEARNEN

NOTE: *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.*

In accordance with Federal civil rights law and U.S. Department of Agriculture (USDA) civil rights regulations and policies, the USDA, its Agencies, offices, and employees, and institutions participating in or administering USDA programs are prohibited from discriminating based on race, color, national origin, religion, sex, gender identity (including gender expression), sexual orientation, disability, age, marital status, family/parental status, income derived from a public assistance program, political beliefs, or reprisal or retaliation for prior civil rights activity, in any program or activity conducted or funded by USDA (not all bases apply to all programs). Remedies and complaint filing deadlines vary by program or incident.

Persons with disabilities who require alternative means of communication for program information (e.g., Braille, large print, audiotape, American Sign Language, etc.) should contact the responsible Agency or USDA's TARGET Center at (202) 720-2600 (voice and TTY) or contact USDA through the Federal Relay Service at (800) 877-8339. Additionally, program information may be made available in languages other than English.

To file a program discrimination complaint, complete the USDA Program Discrimination Complaint Form, AD-3027, found online at http://www.ascr.usda.gov/complaint_filing_cust.html and at any USDA office or write a letter addressed to USDA and provide in the letter all of the information requested in the form. To request a copy of the complaint form, call (866) 632-9992. Submit your completed form or letter to USDA by: (1) Mail: U.S. Department of Agriculture Office of the Assistant Secretary for Civil Rights 1400 Independence Avenue, SW Washington, D.C. 20250-9410; (2) Fax: (202) 690-7442; or (3) email: program.intake@usda.gov.



**USDA**

**United States Department of Agriculture**

United States
Department of
Agriculture

**CERTIFIED MAIL**

Farm Service Agency

200 4ᵗʰ St. SW Fed Bldg.
Huron, SD 57350
PH: 605-352-1160
Fax: 855-243-6003

October 26, 2017

Travis Hearnen
15630 409ᵗʰ Avenue
Conde, SD 57434

### NOTICE OF ACCELERATION OF YOUR DEBT TO THE FARM SERVICE AGENCY AND DEMAND FOR PAYMENT OF THAT DEBT

Dear Mr. Hearnen,

PLEASE NOTE that the entire indebtedness due on the promissory note which evidences the loan received by you from the United States of America, acting through the Farm Service Agency, United States Department of Agriculture is now declared immediately due and payable and described as follows:

| Debt Instrument | Date of Instrument | Original Amount |
|---|---|---|
| Promissory Note 44-05 | August 19, 2014 | $87,922.63 |
| Promissory Note 44-06 | August 19, 2014 | $17,578.38 |
| Promissory Note 44-07 | March 11, 2017 | $137,000.00 |

The promissory notes are secured by security agreements and financing statements described and perfected as follows:

| Security Instrument | Date Recorded | Recording Office | Recording Information |
|---|---|---|---|
| UCC/EFS Filing | February 2, 2011 | SD Secretary of State | 20110331470130 |
| UCC/EFS Continuation | February 1, 2016 | SD Secretary of State | 20160321455928 |
| Security Agreement | Dated 8-2-16 along with previous security agreements | | |

This demand for payment of your indebtedness is made in accordance with the authority granted in the above-described instruments.

The reason for the demand for payment of your indebtedness is as follows:

1.  You have failed to pay installments of principal and interest as scheduled in your promissory notes

The indebtedness due is $170,113.50 unpaid principal, and $1,386.71 unpaid interest, as of 10/26/17, plus additional interest accruing at the rate of $10.7497 per day thereafter, plus any advances made by the United States for the protection of its security and interest accruing on any such advances. Unless full payment of your indebtedness is received made by one of the methods described below within 30 days from the date of this letter, the United States will foreclose the above described security instruments and pursue any other available remedies.

An Equal Opportunity Provider and Employer

HEARNEN EXHIBIT 14

CBK

If your account is referred to the Department of Justice for foreclosure and/or other collection activity after foreclosure, such as a deficiency judgment or enforcing a judgment lien, attorney's fees may be added to your debt as well as a Department of Justice fee of 3 percent.

Full payment may be made in any of the following ways:

(A) CASH

Payment should be made by cashier's check, certified check, or postal money order payable to the Farm Service Agency and delivered to FSA at 25 ½ W. Sixth Avenue, Redfield, SD or mailed to FSA at P.O. Box 146, Redfield, SD 57469. If you submit to the UNITED STATES any payment insufficient to pay the account in full or insufficient to comply with any arrangements agreed to between the Farm Service Agency and yourself, that payment WILL NOT CANCEL the effect of this notice. If such insufficient payments are received and credited to your account, no waiver or prejudice of any rights which the UNITED STATES may have for breach of any promissory note or covenant in the security instruments will result and the Farm Service Agency may proceed as though no such payment had been made.

(B) TRANSFER AND ASSUMPTION

You may transfer the collateral for your loans to someone who is willing and able to assume the debt. Contact FSA immediately if you are interested in this.

(C) SALE

You may sell the collateral for your loans for its market value and send the proceeds to FSA or to other creditors with liens prior to FSA's lien. Contact FSA immediately if you are interested in this.

(D) VOLUNTARY CONVEYANCE

You may convey all of your collateral to the Government. Contact FSA immediately if you are interested in this.

If you have not been advised of your rights to request deferral of payments or other servicing options you should contact FSA at the above mentioned address within 15 days of the receipt of this notice.

If you fail to comply with the requirements outlined in this notice within the next 30 days, the United States plans to proceed with foreclosure/liquidation.
YOU DO NOT HAVE ANY RIGHT TO APPEAL THIS DECISION TO ACCELERATE YOUR FSA DEBTS.

UNITED STATES OF AMERICA

By _____
Jamie White
Acting State Executive Director
Farm Service Agency
United States Department of Agriculture

cc: Spink County FSA, FLP
    John Anderson, District Director, FSA

An Equal Opportunity Provider and Employer

Notice to Customers Presenting Checks

When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction.  For inquiries, please contact your local office.

Privacy Act – A privacy Act Statement required by 5 U.S.C. 552a(e)(3) stating our authority for soliciting and collecting the information from your check, and explaining the purposes and routine uses which will be made of your check information, is available from our internet site at (http://www.fms.treas.gov/otcnet/index.html), or call toll free at (1-866-945-7920) to obtain a copy by mail. Furnishing the check information is voluntary, but a decision not to do so may require you to make payment by some other method.

An Equal Opportunity Provider and Employer



*South Dakota Secretary of State*
## SHANTEL KREBS

## UCC Lien Certified Search Report

**Search Criteria:**
Individual: TRAVIS HEARNEN
Active (unlapsed records only, includes terminations)

| UCC Listing |
|---|

**UCC1 Doc #: 20110331470130**   Filed: 02/02/2011 02:00 PM   Lapse: 02/02/2021 11:59 PM

Debtor(s):   HEARNEN, TRAVIS LEE, 15630 409TH AVE   CONDE, SD 57434

Secured Party(s): USA, ACTING THROUGH FARM SERVICE AGENCY, 25 1/2 W 6TH AVE   REDFIELD, SD 57469

UCC Financing Statement Amendment   Doc #: 20160321455928   Filed: 02/01/2016 02:58 PM

**UCC1 Doc #: 20130651170056**   Filed: 03/06/2013 11:00 AM   Lapse: 03/06/2018 11:59 PM

Debtor(s):   HEARNEN, TRAVIS, 15630 409TH AVE   CONDE, SD 57434
HEARNEN, TRAVIS L, 15630 409TH AVE   CONDE, SD 57434   *Terminated*

Secured Party(s): DACOTAH BANK, PO BOX 298   CLARK, SD 57225-0298

UCC Financing Statement Amendment   Doc #: 20141211070051   Filed: 05/01/2014 11:59 PM
UCC Financing Statement Amendment   Doc #: 20142721070035   Filed: 09/29/2014 11:59 PM

**UCC1 Doc #: 20131491070034**   Filed: 05/29/2013 10:00 AM   Lapse: 05/29/2018 11:59 PM

Debtor(s):   HEARNEN, TRAVIS, 15630 409TH AVE   CONDE, SD 57434   *Tractor/ltr*

Secured Party(s): CNH CAPITAL AMERICA LLC, 100 BRUBAKER AVE   NEW HOLLAND, PA 17557

**UCC1 Doc #: 20141601370094**   Filed: 06/09/2014 01:00 PM   Lapse: 06/09/2019 11:59 PM

Debtor(s):   HEARNEN, TRAVIS LEE, 15630 409TH AVE   CONDE, SD 57434

Secured Party(s): PLAINS COMMERCE BANK, PO BOX 178   CONDE, SD 57434-0178

UCC Financing Statement Amendment   Doc #: 20142521570122   Filed: 09/09/2014 11:59 PM

**UCC1 Doc #: 20142720870005**   Filed: 09/29/2014 08:00 AM   Lapse: 09/29/2019 11:59 PM

Debtor(s):   HEARNEN, TRAVIS LEE, 15630 409TH AVE   CONDE, SD 57434   *Terminated*

Secured Party(s): DACOTAH BANK, PO BOX 298   CLARK, SD 57225-0298

UCC Financing Statement Amendment   Doc #: 20153221310531   Filed: 11/18/2015 01:04 PM

\* Denotes document numbers that do not have electronic copies available. Contact the UCC Division for questions.



20173311625773

00049-1402 11/27/2017 4:09PM Rec'd by SD SOS

## INFORMATION REQUEST

| A. NAME & PHONE OF CONTACT AT FILER (Optional) |
|---|

| B. EMAIL OF CONTACT AT FILER (Optional) |
|---|

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

┌ UNITED STATES OF AMERICA, ACTING THROUGH F┐
25 1/2 WEST 6TH AVE
PO BOX 146
REDFIELD, SD  57469-0146
└ ┘

UCC Doc #: 20173311625773
Filing Date: 11/27/2017 4:09 PM
Secretary of State, Shantel Krebs

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR NAME to be searched - insert only ONE debtor name (1a or 1b) - do not abbreviate or combine names.

1a. ORGANIZATION'S NAME

| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S) INITIAL(S) | SUFFIX |
|---|---|---|---|
| HEARNEN | TRAVIS | | |

| 1c. LIMIT THE SEARCH TO THIS ONE CITY: | 1d. LIMIT THE SEARCH TO THIS ONE STATE: |
|---|---|

1e. Default search is for debtor. Check here to request a secured party search  ☐

2. INFORMATION OPTIONS relating to UCC filings on file in the filing office that include the name identified in item 1:

NOTE: All search results and copies are CERTIFIED.

2a. SEARCH (select one checkbox)  ☑ Active, unlapsed records only (default)    ☐ All records on file, lapsed and unlapsed

2b.  ☑ LIST ONLY          ☐ LIST and ALL COPIES (including attachment pages)       ☐ COPIES ONLY

2c.  ☐ SPECIFIED COPIES ONLY

3. DELIVERY INSTRUCTIONS      ☐ Expedited Search Requested

☑ Mail to address above (C), (default)        ☐ Fax Document To: _____

☐ Pick Up at customer counter          ☐ Ship to Submitter Address with FedEx Acct #: _____

☐ Email to Submitter Email Address        ☐ Ship to Submitter Address with UPS Acct #: _____

NOTE: All information on this form is public record.

INFORMATION REQUEST (UCC2)                                Page 1 of 1

## NOTICE OF TAX LIEN

License #: 3087F

The STATE OF SOUTH DAKOTA, acting by and through its Secretary, NOTICE IS HEREBY GIVEN of the existence of a LIEN in favor of the STATE OF SOUTH DAKOTA upon all property, the rights of property, whether real or personal, belonging to the TAXPAYER herein after named, and which lien exists through failure of said taxpayer to pay the past due excise taxes herein after described.

| | |
|---|---|
| NATURE OF TAX: | Motor Fuel Tax -- IFTA |
| NAME OF TAXPAYER: | TRAVIS HEARNEN |
| ADDRESS OF TAXPAYER: | 15630 409TH AVE<br>CONDE, SD 57434 |
| COUNTY OF: | SPINK |
| DOING BUSINESS UNDER THE NAME OF: | HEARNEN HAY & CATTLE |
| NATURE OF LEGAL ENTITY: | Sole Proprietorship |

Delinquency Period: 1st Quarter 2017

| | |
|---|---|
| Amount of tax due: | $ 1000.00 |
| Penalty: | $ 100.00 |
| Interest now accrued: | $ 29.68 |
| TOTAL | $ 1129.68 |

NAME OF LIEN CLAIMANT:   State of South Dakota

Dated this: 14th day of August, 2017.

STATE OF SOUTH DAKOTA

By _[signature]_
Division of Motor Vehicles
Department of Revenue

STATE OF SOUTH DAKOTA)
                       : SS
County of Hughes       )

On this 14th day of August, 2017, before, the undersigned, a Notary Public within and for said County and State, personally appeared, known to me to be the person whose name is subscribed to within instrument, and acknowledged to me that she and the State of South Dakota acting through and by her executed the same.

NOTARIAL SEAL
NOTARY PUBLIC
SOUTH DAKOTA
Prepared by: Melissa Rix Enga

Address:  Motor Vehicles Division
          445 E. Capitol Ave.
          Pierre, SD 57501
Phone:    (605) 773-4109

Notary Public, South Dakota
H. VILLA
MY COMMISSION EXPIRES
AUGUST 19, 2020

My Commission Expires

INSTRUMENT NO. 71480          Pages: 2
BOOK: 1 STATE TAX LIEN
PAGE: 92



2017/11/29 10:16:55 AM

SHARON JUNGWIRTH, REGISTER OF DEEDS
SPINK COUNTY, SOUTH DAKOTA

Recording Fee: $ 0.00
Return To: SD DEPT OF REVENUE, PIERRE

HEARNEN EXHIBIT 16

## NOTICE OF TAX LIEN

License #: 3087F

The STATE OF SOUTH DAKOTA, acting by and through its Secretary, NOTICE IS HEREBY GIVEN of the existence of a LIEN in favor of the STATE OF SOUTH DAKOTA upon all property, the rights of property, whether real or personal, belonging to the TAXPAYER herein after named, and which lien exists through failure of said taxpayer to pay the past due excise taxes herein after described.

NATURE OF TAX:                                      Motor Fuel Tax – IFTA

NAME OF TAXPAYER:                                  TRAVIS HEARNEN

ADDRESS OF TAXPAYER:                               15630 409TH AVE
                                                   CONDE, SD 57434

COUNTY OF:                                         SPINK

DOING BUSINESS UNDER THE NAME OF:                  HEARNEN HAY & CATTLE

NATURE OF LEGAL ENTITY:                            Sole Proprietorship

          Delinquency Period:                      2nd Quarter 2017

          Amount of tax due:              $   1000.00
          Penalty:                        $    100.00
          Interest now accrued:           $     30.00
          TOTAL                           $   1130.00

NAME OF LIEN CLAIMANT:     State of South Dakota

Dated this: 22nd day of November, 2017.

                                                   STATE OF SOUTH DAKOTA

                                                   By _____
                                                   Division of Motor Vehicles
                                                   Department of Revenue

STATE OF SOUTH DAKOTA)
                     : SS
County of Hughes     )

On this 22nd day of November, 2017, before, the undersigned, a Notary Public within and for said County and State, personally appeared, known to me to be the person whose name is subscribed to within instrument, and acknowledged to me that she and the State of South Dakota acting through and by her executed the same.

H. VILLA
NOTARIAL SEAL
NOTARY PUBLIC
SOUTH DAKOTA

*Prepared by:    Melissa Big Eagle
*Address:        Motor Vehicles Division *
*                445 E. Capitol Ave.     *
*                Pierre, SD 57501        *
*Phone:          (605) 773-4109          *

                                                   _____
                                                   Notary Public, South Dakota

                                                   H. VILLA
                                                   MY COMMISSION EXPIRES
                                                   AUGUST 18, 2020
                                                   My Commission Expires